## St. Clair et al. *v.* Kelly.

Town.—*Incorporation.*—*Town of Ohio Falls.*—The town of Ohio Falls, situated on the land laid off and platted as the town of Clarksville, under the act of Virginia, is properly incorporated under the statute, 1 G. & H. 619, and the amendments thereto.

From the Clarke Circuit Court.

*J. G. Howard* and *J. F. Read,* for appellants.

*J. H. Stotsenburg* and *G. V. Howk,* for appellee.

PETTIT, J.—This suit was brought by the appellee against the appellants, who were the officers of the town of Ohio Falls, to enjoin the collection of a tax levied by said town.

A demurrer, for want of sufficient facts, to the complaint was overruled, and final judgment rendered for the plaintiff.

It is admitted by counsel on both sides that the only question in the case is, could the town of Ohio Falls be incorporated under our statute, 1 G. & H. 619, and the various amendments following, on the ground or territory on which it claims to exist, it being admitted that the town was properly organized and incorporated, and the tax properly levied, if the town could be incorporated at the place where located?

It is admitted that the town of Ohio Falls is situated on the one thousand acres laid off and platted as the town of Clarksville, under an act of Virginia of 1783, 1 G. & H. 723, and it is, therefore, claimed and contended that the town of Ohio Falls could not, under our laws, be incorporated with municipal authority on the territory of Clarksville.

In this view we do not concur. A piece of ground, under the act of Virginia, was laid off, platted, and called the town of Clarksville. It was a town of land and paper, but not of people sufficient to make it a town with political and municipal rights and powers under our law. By the act of Virginia, no political or municipal rights or powers were conferred upon the people as to local government, while our laws confer numerous such rights and powers. But even if this had been done by Virginia, it would be competent for Indiana to change and

alter such municipal rights and powers after she acquired sovereignty, as Virginia could have done before she parted with it; but no vested right of property could be destroyed by either government. Virginia, when she passed the law, *supra,* may have expected that a large town or city would grow up at that place, and that she would retain the sovereignty, and might, therefore, confer political or municipal power upon the people thereof. But before any of these things happened, Virginia transferred her sovereignty to the United States, and they transferred it, so far as local and municipal government is concerned, to the State of Indiana, which placed this State precisely in the place of Virginia before her cession to the United States. " The new government takes the place of that which has passed away."

On this subject we commend to the careful, inquiring reader and student the whole of chapter 33, and particularly section 25, of Halleck's International Law and Laws of War, and authorities cited. In forming the present constitution of the State, its boundaries were declared, which include the locality of the town of Ohio Falls. Section 2 of article 14 declares, that " the State of Indiana shall possess jurisdiction and sovereignty co-extensive with the boundaries declared in the preceding section." It would be a poor and weak sovereignty that could not create, incorporate, and change the name and powers of a municipal town, when no attempt is made, as in this case, to interfere with rights of private property. The schedule, sixteenth clause, of the constitution provides:

" The General Assembly may alter or amend the charter of Clarksville, and make such regulations as may be necessary for carrying into effect the objects contemplated in granting the same ; and the funds belonging to said town shall be applied according to the intention of the grantor."

This provision was wholly unnecessary under the authorities above cited, and does not control this case.

But even if this provision of the schedule to the constitution were proper, it is clear that the amendment might be made

by a general law, as was done by the act of June 11th, 1852, 1 G. & H. 619.

The judgment is reversed, at the costs of the appellee, with instructions to sustain the demurrer to the complaint.