

FILED

Feb 26 2015, 8:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Gregory F. Zoeller
Attorney General of Indiana

Kathy Bradley
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

James N. Clevenger
Wyland, Humphrey & Clevenger, LLP
Plymouth, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Indiana Bureau of Motor
Vehicles,

*Appellant-Respondent,*

v.

Jennifer M. Gurtner,

*Appellee-Petitioner*

February 26, 2015

Court of Appeals Case No.
50A03-1407-MI-256

Appeal from the Marshall Superior
Court

The Honorable Dean A. Colvin,
Judge

Cause No. 50D02-1406-MI-26

**Mathias, Judge.**

[1] The Indiana Bureau of Motor Vehicles ("BMV") appeals the order of the
Marshall Superior Court granting a petition for judicial review filed by Jennifer
M. Gurtner ("Gurtner") after her license was suspended for failure to provide
proof of financial responsibility following an automobile accident. On appeal,

the BMV claims that the trial court was without authority to grant the petition because the controlling statute provides the trial court with no discretion to overturn the suspension. Concluding that Gurtner did not adequately avail herself of the available statutory remedies, we reverse.

## Facts and Procedural History

[2] The parties do not dispute the relevant facts of this case. On April 24, 2014, Gurtner was driving a vehicle owned by her and her husband when she struck a deer. Gurtner's car was damaged, and she reported the incident to the police. Following the accident, the BMV notified her that she was required to provide proof of financial responsibility, i.e., automobile insurance, at the time of the accident. Gurtner and her husband thought they had paid for automobile insurance on all of their vehicles, but because of a mistake on the part of Gurtner's insurance agent, the vehicle involved in the collision with the deer had been dropped from their insurance coverage. Gurtner was therefore unable to provide the BMV with proof of her financial responsibility. The BMV then notified Gurtner that her license would be suspended, pursuant to Indiana Code section 9-25-6-3, for ninety days effective June 10, 2104.

[3] On June 12, 2014, Gurtner filed a verified petition for judicial review, seeking to challenge the BMV's suspension of her license. The trial court held a hearing on the matter on June 30, 2014, and orally granted Gurtner's petition at the conclusion of the hearing. The trial court entered a written order granting Gurtner's petition on July 2, 2014, which provides in relevant part:

2. The allegations in [Gurtner's] Petition for Judicial Review concerning the suspension of her driving privileges are true.

3. [Gurtner and her husband] have secured and paid for automobile liability insurance on all other parties' motor vehicles and had coverage on motor vehicles on April 24, 2014.

4. Through no fault of Jennifer Gurtner, she was not able to furnish the BMV [with proof of] financial responsibility.

5. The [BMV] does not permit drivers an administrative hearing to dispute and/or explain the driver's problems for complying with proof of financial responsibility.

THEREFORE, it is ordered that the [BMV] dismiss, withdraw, rescind, or revoke any administrative driver's license suspension of Jennifer M. Gurtner and that her full driving privileges be immediately reinstated and restored to her upon her payment of a reinstatement fee to the [BMV].

Appellant's App. p. 10. The BMV now appeals.

# Standard of Review

[4] The State claims that we should review the trial court's order and that the trial court should have reviewed the BMV's order under the Administrative Orders and Procedures Act ("AOPA"), Indiana Code article 4-21.5.[1] This is incorrect. Review of the suspension of a driver's license for failure to provide proof of financial responsibility is governed by Indiana Code section 9-25-6-16(d). This

---

[1] When a trial court reviews an agency action under the AOPA, the court may neither try the case *de novo* nor substitute its judgment for that of the agency. *Dev. Servs. Alternatives, Inc. v. Ind. Family & Soc. Servs. Admin.*, 915 N.E.2d 169, 176 (Ind. Ct. App. 2009) (citing Ind. Code § 4-21.5-5-11). Instead, courts must defer to the expertise of the administrative body and will reverse the agency's decision only if it is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to a constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. *Id.* (citing Ind. Code § 4-21.5-5-14).

section provides that "[a]n action taken or a determination made by the [BMV] under this section is not subject to IC 4-21.5 [ i.e., AOPA]. However, the person may file a petition for judicial review under this chapter." *Id.* Thus, judicial review of the suspension of driving privileges is specifically excluded from the purview of the AOPA. Yet, the remaining sections of Indiana Code chapter 9-25-6 contain no other provisions explaining the scope of the judicial review called for in section 16.

[5] Whatever can be said about the petition for judicial review called for in Indiana Code section 9-25-6-16, we know that it is not the agency-deferential review set forth in the AOPA.[2] What is at issue here is essentially a question of statutory interpretation — whether the BMV has any discretion in deciding to suspend Gurtner's license. Such questions are purely of law and therefore reviewed *de novo*. *Hilliard v. Jacobs*, 916 N.E.2d 689, 692-93 (Ind. Ct. App. 2009), *trans. denied*. The first, and often the last, step in interpreting a statute is to examine the language of the statute. *Town of Chandler v. Indiana-Am. Water Co.*, 892 N.E.2d 1264, 1268 (Ind. Ct. App. 2008). When we are confronted with an unambiguous statute, we do not apply any rules of statutory construction other than to give the words and phrases of the statute their plain, ordinary, and usual meaning. *Id.*

---

[2] Indeed, prior to 2012, section 16 called for review of the BMV's determination under the AOPA. However, in 2012, and again in 2013, this language was amended to specifically provide that review under the AOPA was not applicable and that the aggrieved party should instead file a petition for "judicial review under this chapter." *See* Ind. Pub. Law 125-2012 § 272, Ind. Pub Law. 59-2013 § 24.

# I. Statutory Construction

Here, the relevant statutes clearly required Gurtner to present to the BMV evidence that she had insurance:

> Not more than forty-five (45) days after the bureau receives a copy of an accident report under IC 9-26, *the bureau shall send to each person identified in the report as an operator of a motor vehicle involved in the accident a request for evidence of financial responsibility under section 3 of this chapter*, unless the evidence has already been filed with the bureau. The request for evidence of financial responsibility shall be sent to each person identified in the report as an operator of a motor vehicle involved in the accident regardless of fault.

Ind. Code § 9-25-5-2 (emphasis added).

Section 4 of this chapter provides, "[t]o avoid suspension of driving privileges," a person who receives such a request for financial responsibility "must ensure that the insurance company of the person provides the bureau with a certificate of compliance indicating that financial responsibility required by IC 9-25-4-1 was in effect with respect to the motor vehicle, or the operation of the motor vehicle, on the date of the accident described in the accident report." Ind. Code § 9-25-5-4. Moreover, it is the responsibility of the person who receives such a request for proof of financial responsibility "to ensure that the insurance company of the person has provided a certificate of compliance." *Id.*

The penalty for failure to provide the BMV with such a certificate of compliance is set forth in Section 9-25-6-3:

> (a) If the bureau:

(1) does not receive a certificate of compliance for a person identified under IC 9-25-5-2 within forty (40) days after the date on which the bureau mailed the request for evidence of financial responsibility to the person; or

(2) receives a certificate that does not indicate that financial responsibility was in effect with respect to the motor vehicle operated by the person or operation of the motor vehicle by the person on the date of the accident referred to in IC 9-25-5-2;

the bureau *shall* take action under subsection (d).

* * *

(d) Under the conditions set forth in subsection (a), (b), or (c), the bureau *shall* immediately suspend the person's driving privileges or motor vehicle registration, or both, as determined by the bureau, for at least ninety (90) days and not more than one (1) year.

Ind. Code § 9-25-6-3 (emphasis added).

[9] Thus, the plain language of the statutes at issue required the BMV to suspend Gurtner's license because, regardless of fault, she could not provide proof of financial responsibility at the time of the accident due to the undisputed fact that the car she was driving at the time of the accident was not covered by her insurance carrier. *See Spencer v. Spencer*, 990 N.E.2d 496, 497 (Ind. Ct. App. 2013) ("The use of the word 'shall' in a statute 'generally connotes a mandatory as opposed to a discretionary import.'") (quoting *Parmeter v. Cass Cnty. Dep't of Child Service*s, 878 N.E.2d 444, 447 (Ind. Ct. App. 2007)).

## II. Due Process

[10] Gurtner admits that the relevant statute required that her license be suspended. She claims, however, that the BMV denied her due process by failing to provide

for a system of administrative review. The State argues that we should not consider Gurtner's due process argument because she did not present this issue to the trial court. Accordingly, we address the State's claim of waiver before addressing the merits of Gurtner's claim.

*A. Waiver*

[11] It has long been the general rule in Indiana that an argument or issue presented for the first time on appeal is waived for purposes of appellate review. *See, e.g., Plank v. Cmty. Hospitals of Ind., Inc.*, 981 N.E.2d 49, 53 (Ind. 2013) ("[A]ppellate review presupposes that a litigant's arguments have been raised and considered in the trial court."); *Ind. Dep't of Envtl. Mgmt. v. Raybestos Prods. Co.*, 897 N.E.2d 469, 474 (Ind. 2008) ("Generally, an appellate court will not review an issue that was not presented to the trial court."), *corrected on reh'g*, 903 N.E.2d 471 (Ind. 2009); *Troxel v. Troxel*, 737 N.E.2d 745, 752 (Ind. 2000) ("A party may not raise an issue for the first time in a motion to correct error or on appeal."); *Franklin Bank & Trust Co. v. Mithoefer*, 563 N.E.2d 551, 553 (Ind. 1990) ("A party cannot change its theory and on appeal argue an issue which was not properly presented to the trial court."); *Indianapolis Newspapers, Inc. v. Fields*, 254 Ind. 219, 260, 259 N.E.2d 651, 670 (1970) ("We do not review issues presented for the first time on appeal except to avoid grave injustice.").

[12] As we explained in *GKC Indiana Theatres*:

> This rule exists because trial courts have the authority to hear and weigh the evidence, to judge the credibility of witnesses, to apply the law to the facts found, and to decide questions raised by the parties. Appellate courts, on the other hand, have the authority to review

questions of law and to judge the sufficiency of the evidence supporting a decision. The rule of waiver in part protects the integrity of the trial court; it cannot be found to have erred as to an issue or argument that it never had an opportunity to consider. Conversely, an intermediate court of appeals, for the most part, is not the forum for the initial decisions in a case. Consequently, an argument or issue not presented to the trial court is generally waived for appellate review.

764 N.E.2d 647, 651 (Ind. Ct. App. 2002) (citations omitted). Even though this rule is more often applied to appellants — as the parties seeking to reverse the judgment of the trial court — it has also been held to apply to appellees. *See, e.g., Rausch v. Reinhold*, 716 N.E.2d 993, 1002 (Ind. Ct. App. 1999); *Essex v. Ryan*, 446 N.E.2d 368, 375 (Ind. Ct. App. 1983) (both applying rule to appellee).

[13] More recently, however, our supreme court has signaled a shift away from this rule, at least as far as appellees are concerned. In *Citimortgage v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012), the court stated that a party who has prevailed at the trial court, i.e., the appellee, "may defend the trial court's ruling on any grounds, including grounds not raised at trial." Again, in *Drake v. Dickey*, 12 N.E.3rd 875, 875 (Ind. 2014), the court cited *Citimortage* in support of its holding that "[t]he Appellate Rules do not require the filing of a cross appeal where the appellee does not seek reversal of the order or judgment appealed but instead raises a ground for affirming that appears in the record and was rejected or not considered by the trial court or agency." *Id*. at 875 (citing *Citimortgage*, 975 N.E.2d at 813).

[14]   Under *Citimortgage*, an appellant may not present an argument that was not presented to the trial court, but this limitation does not apply to an appellee who seeks to affirm the trial court's judgment. This rule is consistent with the presumption in all appeals that a trial court's judgment is correct as well as the general rule that on appeal we will affirm a judgment on any theory supported by the record. *See J.M. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 975 N.E.2d 1283, 1289 (Ind. 2012) ("on appellate review the trial court's judgment will be affirmed if sustainable on any theory or basis found in the record."). Thus, we cannot say that Gurtner failed to preserve her due process argument by failing to present it to the trial court.

[15]   Moreover, when it comes to questions of constitutional dimension, Indiana appellate courts have long exercised discretion to address the merits of constitutional claims even when not properly preserved. *Plank v. Cmty. Hospitals of Ind., Inc.*, 981 N.E.2d 49, 53 (Ind. 2013). Accordingly, "appellate courts are not prohibited from considering the constitutionality of a statute even though the issue otherwise has been waived. And indeed a reviewing court may exercise its discretion to review a constitutional claim on its own accord." *Id.* at 53-54.

[16]   We also conclude that the "futility exception" to the exhaust any administrative remedies rule is applicable. The exhaustion of administrative remedies may be excused if the exercise would be futile. *Johnson v. Celebration Fireworks, Inc.*, 829 N.E.2d 979, 984 (Ind. 2005). To prevail upon a claim of futility, one must show that the administrative agency was powerless to effect a remedy or that it would have been impossible or fruitless and of no value under the circumstances. *Id.*

Here, the BMV admits that it was powerless to effect a remedy because the statute requires the suspension of Gurtner's license. In short, we will address Gurtner's due process argument.

*B. Procedural Due Process*

As set forth above, Indiana Code section 9-25-6-3 requires the BMV to suspend the license of a person who, regardless of fault, cannot provide proof of financial responsibility at the time of an accident. This much Gurtner admits. She claims, however, that she was denied due process because she was not afforded an opportunity to explain to the BMV that her license should not be suspended because the failure to maintain insurance coverage on her vehicle was not her fault.

In addressing Gurtner's claim, we note that driving a motor vehicle is not a fundamental right. *See Mitchell v. State*, 659 N.E.2d 112, 116 (Ind. 1995) (citing *Clark v. Jeter*, 486 U.S. 456, 461 (1988)); *Ruge v. Kovach*, 467 N.E.2d 673, 677 (Ind. 1984). However, a driver may still bring a claim of lack of due process for the temporary taking of her driving privileges. *See Ruge*, 467 N.E.2d at 678 (citing *Dixon v. Love*, 431 U.S. 105 (1977)). As explained by the United States Supreme Court:

> Once [driver's] licenses are issued . . . their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.

*Bell v. Burson*, 402 U.S. 535, 539 (1971).

[19] "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *McKinney v. McKinney*, 820 N.E.2d 682, 688 (Ind. Ct. App. 2005) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

[20] As explained by the Supreme Court in *Bell*, "it is fundamental that except in emergency situations . . . due process requires that when a State seeks to terminate an interest such as that here involved, it must afford notice and opportunity for hearing appropriate to the nature of the case before the termination becomes effective." 402 U.S. at 539; *see also* Daniel E. Feld, Annotation, *Necessity of Notice and Hearing Before Revocation or Suspension of Motor Vehicle Driver's License*, 60 A.L.R.3d 361 (1974). Here, nothing indicates that this was an emergency situation. Thus, pursuant to *Bell*, the State must afford a driver such as Gurtner an opportunity for a hearing appropriate to the nature of the case before the termination becomes effective. *Id*.

[21] A statutory provision is in place for review of the suspension of a driver's license for failure to provide proof of financial responsibility. Indiana Code section 9-25-6-16 states:

> (a) A person whose driving privileges are suspended under this article may notify the bureau, in writing, that the bureau's records contain a material error with respect to the suspension of the person's driving privileges. The bureau shall, within thirty (30) days after the date on which the bureau receives the notice, determine whether a material

error was made with respect to the suspension of the person's driving privileges.

(b) If the bureau determines that a material error was made with respect to the suspension of the person's driving privileges, the bureau shall reinstate the person's driving privileges.

(c) If applicable, the bureau shall notify the prosecuting attorney of the county where the suspension originated that the bureau has determined that a material error exists. The prosecuting attorney is entitled to respond to the bureau's determination.

(d) An action taken or a determination made by the bureau under this section is not subject to IC 4-21.5. However, the person may file a petition for judicial review under this chapter.

Subsections 16(a) and (b) provide for a documentary review but not a hearing. Thus, Gurtner's only means of obtaining a hearing regarding the suspension of her license was through the judicial review provided in subsection (d).

[22] Gurtner argues that the BMV should have afforded her the opportunity to request a hearing at which she could have presented her defense, i.e., her claim that her failure to maintain proof of financial responsibility was not her fault. However, even if the BMV provided her with such an opportunity, it does not appear that the BMV would have been statutorily authorized to disregard the clear language of the statute and not suspend Gurtner's license. Gurtner's complaint is essentially that the statute is unfair; but the BMV is required to apply the relevant statute whether or not it results in a perceived unfairness in a particular case.

[23] The State argues that the provision for judicial review under IC 9-25-6-16 (d) is adequate to address any due process concerns. However, when judicial review occurs after the suspension called for in Indiana Code section 9-25-6-3, such

post-suspension review does not provide adequate due process; instead, post-suspension judicial review comports with due process only if the effectiveness of the suspension is stayed pending the judicial hearing. *Jennings v. Mahoney*, 404 U.S. 25, 26-27 (1971); *see also Wollenburg v. Conrad*, 522 N.W.2d 408, 412 (Neb. 1994) (holding that lack of administrative hearing before suspension of license did not deny driver due process where suspension was stayed during judicial review and driver had opportunity to present evidence and cross-examine witnesses at judicial hearing prior to final suspension of license).

[24]     Here, the BMV suspended Gurtner's license before the petition for judicial review could be heard. However, Gurtner failed to request any stay of the suspension of her license. Perhaps more importantly, neither did she request a "hardship" license. At the time Gurtner's suspension was pending, Indiana Code section 9-24-15-1(1)[3] provided that a trial court could grant a hardship license to an individual who failed to provide proof of financial responsibility after receiving a request for such proof following an accident "if the individual shows by a preponderance of the evidence that the failure to maintain financial responsibility was inadvertent." Had Gurtner availed herself of this provision, she could have demonstrated that her failure to maintain her financial responsibility was inadvertent and thereby have been able to maintain some, or all, of her driving privileges. In other words, a statutory method was available

---

[3] This section and its chapter were repealed effective January 1, 2014. *See* Ind. Pub. Law 217-2014 § 87. However, a chapter with similar provisions was enacted effective January 1, 2015, and allows a trial court to stay the effectiveness of a license suspension and grant "specialized driving privileges." *See* Ind. Code § 9-30-16-3.

for Gurtner to present her claim — via a request for a hardship license. Yet Gurtner failed to avail herself of this available statutory method. Under these facts and circumstances, we cannot say that Gurtner was denied procedural due process.[4]

## Conclusion

This case sets forth facts that were not really contemplated by the licensure statutes in effect at the time. Gurtner and the trial judge involved did the best they could do under unusual circumstances. That said, Gurtner failed to take advantage of the existing statutory remedies that would have provided her with an opportunity to explain why her failure to maintain financial responsibility was not her fault. Accordingly, we cannot say that the suspension of her license was accomplished without adequate due process.

Reversed.

Najam, J., and Bradford, J., concur.

---

[4] We find Gurtner's citation to *State v. Martin*, 484 N.E.2d 1309 (Ind. Ct. App. 1985), to be unavailing. In that case, Martin had been convicted of driving while intoxicated, and his license was accordingly suspended. The BMV then notified Martin that his license would remain suspended until he furnished proof of financial responsibility required by the then-relevant statute. To comply with this requirement, Martin purchased "high risk" insurance, and the BMV issued him a restricted license. Martin's insurance coverage then lapsed, even though he claimed that he had continued to pay his premiums. Because of the lapse of coverage, the BMV suspended Martin's license without notice or a hearing. After Martin was subsequently arrested for driving while suspended, he appealed and claimed that the suspension of his license without notice or a hearing deprived him of due process. On appeal, we concluded that the lack of notice and hearing deprived Martin of due process. *Id.* at 1314. Here, however, Gurtner was provided with notice and had the opportunity for a judicial hearing, which was not the case in *Martin*.